Barbara GRANO, Plaintiff–Appellee, Cross–Appellant,

v.

The DEPARTMENT OF DEVELOPMENT OF the CITY OF COLUMBUS et al., Defendants–Appellants, Cross–Appellees.

Nos. 78–3161, 78–3162.

United States Court of Appeals, Sixth Circuit.

Argued June 18, 1980.

Decided Dec. 10, 1980.

Gregory S. Lashutka, City of Columbus, Dept. of Law, Patrick M. McGrath, H. Ritchey, Hollenbaugh, Paul M. Aucoin, Columbus, Ohio, for defendants–appellants, cross–appellees.

Frederick M. Gittes, Barbara A. Terzian, Spater, Gittes, Marshall & Terzian, Columbus, Ohio, for plaintiff–appellee, cross–appellant.

Before ENGEL, KEITH and MARTIN, Circuit Judges.

KEITH, Circuit Judge.

This sex discrimination case comes before us with both parties cross–appealing portions of the district court's decision below. The district judge found that the City of Columbus failed to promote Plaintiff Barbara Grano because of her sex in violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e *et seq.* However, the district judge held that Ms. Grano failed to show that the defendant had violated 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution. The City of Columbus contests the finding of Title VII liability on the ground that the evidence did not support the finding under any of the various theories of discrimination. Plaintiff Grano cross–appeals from the holding that there was no liability under the § 1983 claim and that she was not constructively discharged. In addition, Ms. Grano contends that the award of attorney's fees was inadequate. We vacate and remand for further proceedings.

I.

Plaintiff Barbara Grano graduated from Ohio State University in 1971 with a Bachelor of Arts Degree in Journalism and Public Relations. Following an interview with Defendant Jack Huddle, Director of the Department of Development of the City of Columbus, the plaintiff was employed by the Department of Development in February of 1972. Ms. Grano was employed as part of the City's participation in the Emergency Education Act of 1971 (EEA). She was assigned to the Administrative Section with Mr. Huddle as her direct supervisor. Although her primary duties consisted of general research and public relations work, the plaintiff was hired for a position entitled "Research Analyst I." In July of 1972, the position of Research Analyst I was changed to "Development Project Assistant I" without affecting the employee's duties or rate of compensation.

Plaintiff's claims of sex–based discrimination were based on two grounds. First, plaintiff contended that the defendants discriminated against her in the terms and conditions of her employment by requiring her to perform secretarial tasks not performed by similarly situated male employees. Second, the plaintiff asserted that she was denied promotion and opportunities for promotion because of her sex.

With regard to her charge that she was required to perform secretarial tasks because she was a female, the trial court found:

> that the plaintiff was asked to substitute for Jones (Director Huddle's clerical assistant) because she possessed the necessary skills and worked in close proximity

to the Director's office, and not because plaintiff is a female.

With regard to the plaintiff's contention that she was denied the promotion and denied opportunities for promotions, the court considered five incidents which were advanced by the plaintiff as being separate acts of discrimination.

### A.

In November of 1972, three provisional promotions were made within the Department of Development. Michael McLaughlin was promoted from Development Planner I to Development Planner II. Jeffrey Cabot and Lois Preston, both Development Project Assistant Is, were promoted to the II level. Although Preston had been in the department since 1970, Cabot and McLaughlin were both originally employed in 1972. Preston was a permanent employee paid with city funds. Cabot and McLaughlin were listed as "limited" employees and paid under the EEA program.

When the plaintiff learned of these promotions she inquired about her own opportunities for advancement. The plaintiff was told that she could not be promoted while employed through the EEA program, but that she would be retained as a permanent employee and promoted when EEA funds were exhausted.

The promotions of Cabot, McLaughlin and Preston were made on recommendations of Bruce Miller, the Supervisor in the Planning Section. Miller could not recollect his specific reasons for requesting the promotions of Cabot and McLaughlin. Since the plaintiff was not under Miller's supervision, Miller testified he did not concern himself with whether or not Barbara Grano's work merited a promotion. However, it is undisputed that Mr. Huddle, the Director of the Department of Development was aware of, and in fact, approved all three promotions.

### B.

In May 1973, the Department of Development hired Robert Orr on Bruce Miller's recommendation. Orr was hired to compile a computerized demographic land use information base. Applicants for this position were sought through advertisements and at conventions, but no real effort was made to recruit applicants from within the Department of Development. Orr was classified as a Development Project Assistant II. Mr. Foster, whom Orr replaced, had been classified six pay ranges higher than Orr's starting classification.

The plaintiff testified that she felt she was qualified for the position held by Orr and would have accepted a promotion to that position. She testified that she had taken computer and statistics courses in undergraduate school, and had experience in the compilation of statistical data through her former employment with Midwestern Psychological Services, Inc. This information did not, however, appear on plaintiff's resume, or on her application for employment with the Department of Development in 1972. A reference to plaintiff's experience collecting statistical data was added to her employment application in her personnel file sometime in 1973. The plaintiff could not recall whether this information was added before or after Orr was hired, but she did testify that Huddle would not have seen her application after this information was added.

### C.

In June of 1973, the Civil Service Commission gave a regular examination for the position of Development Project Assistant II. Among those who took the examination were Orr, Casey, Preston and the plaintiff. Orr and Casey had no permanent appointments but both held provisional appointments at the DPA II position. Preston had a permanent DPA I appointment, but had been provisionally appointed to DPA II. The plaintiff still held a DPA I appointment at the time that the examination was given. The eligibility list, posted August 3, 1973, prepared as a result of the Civil Service examination, placed the plaintiff ninth, Casey eleventh, Preston sixteenth and Orr twentieth.

The defendants conceded that under normal circumstances Orr, Casey and Preston would not have been certified for their permanent positions under the applicable Civil Service rules and regulations. Their positions would then have been filled from the first five persons on the eligibility list. Under normal circumstances then, the plaintiff would not have been eligible for a promotion to a DPA II position at that time.

Only Preston was decertified, however. The provisional appointments of Orr and Casey were continued after repeated requests from Defendant Huddle to the Civil Service Commission. The provisional status of Orr was continued because of the specialized function which he was performing in the preparation of the demographic and land use data base. The provisional status of Casey was continued because he was selected by Mayor Moody as the liaison between the Department of Development and the Mayor's Office. The defendants found no such unique or special considerations to exist with respect to Preston, and effective August 27, 1973, she was compelled to accept a demotion to her former DPA I position in order to continue her employment in the department. Wayne Brown, a male, was appointed to a permanent DPA II position on August 16, 1973. Brown ranked third on the eligibility list.

The defendants argue that in order to maintain Preston's promotion after the eligibility list was posted, they would have had to request the Civil Service Commission not to follow its rule of replacing provisional appointments with permanent appointments. Bruce Miller, the Assistant Administrator of the Department of Development, testified, however, that the department had a practice of requesting extensions of provisional appointments for individuals who the department desired to retain. Such requests were repeatedly made on behalf of Orr and Casey, but none were made for Preston. Miller further testified that the department has also, in some cases, reclassified persons who did not qualify on the Civil Service eligibility list to positions for which no eligibility list was established. In keeping with his practice, Orr was promoted to Data Processing Coordinator after several extensions of his provisional DPA II appointment. In October of 1974 Casey's qualification was changed to Urban Sociologist II. However, the defendants made no effort to reclassify Preston in a position equivalent to DPA II. Preston ultimately received a promotion by transferring out of the Development Department.

### D.

During the summer and fall of 1973, the plaintiff, together with another employee, Myron Osborn, prepared and identified various functions in the area of public relations which needed to be performed in the Department of Development. They proposed that a job be created to perform these functions. It is undisputed that at this time the plaintiff was the only person in the department with specific public relations duties. The plaintiff was performing to some extent many of the public relations tasks which she and Osborn had outlined.

In November of 1973, the plaintiff approached Defendant Huddle and requested a promotion to the position of Public Information Assistant II. Huddle told the plaintiff that no such position existed or was contemplated. He again advised plaintiff that she would be retained as a permanent employee and promoted when the EEA funding for her position ran out.

In January of 1974, Huddle requested the Civil Service Commission to create a Public Information Specialist II position in the Department of Development. The job description for this proposed position was substantially the same as the functions identified by the plaintiff and Osborn in 1973.

In February of 1974, Defendant Huddle hired Richard McClure to fill the newly-created public relations position. Despite the fact that Huddle knew the plaintiff was seeking a promotion in the field of public relations and had specifically requested the position later filled by McClure, and the testimony of Huddle that they attempt to consider present employees when vacancies occur, Huddle did not inform the plaintiff

that the new position had been created nor did he post notice of a job position within the department. Huddle testified that the plaintiff did not have the three years experience required for the position which McClure was hired to fill.

### E.

After McClure was hired, the plaintiff was assigned to be his assistant and fell under his direct supervision. McClure assumed responsibility for most of the public relations functions previously performed by the plaintiff. During this time the plaintiff found that she did not have sufficient work to do. She also testified that she had difficulty developing a working relationship with McClure.

On April 15, 1974, the plaintiff submitted her resignation. Although not specified in her notice of resignation, the plaintiff gave lack of responsibilities, failure to be promoted, and her different treatment from male employees as the reasons for her resignation. At trial, the plaintiff characterized her working conditions as intolerable and argued that she was constructively discharged.

### II.

The district court found that:

the plaintiff has presented a prima facie case of a continuing practice of sex–based discrimination in the promotion policy of the defendants. In so finding, the Court has considered the evidence relating to the Preston demotion and the stipulated statistics relating to the number of females employed in various positions by the defendants, together with all of the other evidence. Although the plaintiff failed to show that she was subjected to, or damaged by, this policy with respect to the promotions of Cabot, McLaughlin, Orr and Casey, the Court finds that the

plaintiff met her burden of proof with respect to the McClure hiring. The Court further finds that the defendants failed to present evidence which rebuts plaintiff's prima facie case.

Thus, after reviewing the five instances of alleged discrimination, four involving promotion and one involving clerical duties, the district court found no discrimination in three instances, discrimination against another female (Preston) in a fourth and discrimination against the plaintiff in the fifth.

### A.

We see no basis for a finding of a pattern or practice of sex–based discrimination. The Preston demotion is certainly not enough to establish a pattern. More important, the stipulated statistics were inadequate to sustain a finding of discrimination. The only statistics introduced into evidence were numbers of male and female employees as of July 5, 1974.[1] We agree with defendants that these statistics do not tend to show discrimination. The reason is that plaintiffs introduced no evidence as to the relevant labor market. The job to which Ms. Grano wished to be promoted required a college degree and three years public relations experience.[2] No evidence was presented as to how many women were available who possessed these qualifications in the surrounding area. The mere fact that a department is overwhelmingly male does not support an inference of discrimination where there are legitimate special qualifications for employment or advancement and no evidence is introduced as to the number and availability of qualified women. *See Hazelwood School District v. United States*, 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977); *Pack v. Energy Res. & Admin.*, 566 F.2d 1111, 1113 (9th Cir. 1977). *Contrast Davis v. Califano*, 613 F.2d 957 (D.C.Cir.1979) (statistical data indicated

---

1. These figures were as follows:

| | MALE | FEMALE |
|---|---|---|
| Officers and Managers | 8 | 1 |
| Professional | 24 | 3 |
| Technical | 79 | 8 |
| Office and Clerical | 1 | 25 |
| Trainees | 3 | 1 |

2. Plaintiff has not contested these requirements.

low percentage of women in upper grades of the same organizational units and higher promotion ratio for men). In this case, there was no evidence of past discrimination against women in hiring or promotions, and no evidence of any kind concerning the proper labor market.

We do believe that the district court could use the finding that defendants had discriminated against another woman, Ms. Preston, in support of an inference that the defendants had discriminated against the plaintiff, Ms. Grano. *See McBride v. Delta Airlines, Inc.*, 551 F.2d 113 (6th Cir. 1977). However, to succeed in her suit, Ms. Grano had to prove that she was discriminated against. *See Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (where a pattern or practice of discrimination has been shown, each member of the discriminated–against class is presumptively entitled to relief, but individual relief may be granted only on an individualized finding of discrimination).

█ In determining whether Ms. Grano was discriminated against, the district court correctly ruled that the proper framework for analysis was provided by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell*, the plaintiff must first show that (1) she belongs to a minority group, (2) that the plaintiff applied for and was qualified for a job for which the employer was seeking applicants, (3) that despite her qualifications she was rejected, and (4) that after her rejection the job remained open and the employer continued to seek applicants from persons with plaintiff's qualifications.

█ If the plaintiff demonstrates this, she has established a *prima facie* case of discrimination. The employer must then articulate a nondiscriminatory reason why he failed to hire or promote the plaintiff. If the employer does this, the plaintiff has

the burden of proving that the articulated reason was false or pretextual. *Id. Accord Furnco Construction Co. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). *See Smithers v. Bailar*, 629 F.2d 892 (3rd Cir. 1980).

█ In this case, the district court applied *McDonnell Douglas* and concluded that the plaintiff had made out a prima facie case of discrimination. The court found that the plaintiff was a woman who was qualified for the position she applied for,[3] but who was nonetheless rejected. We have no problem with this finding.

### B.

█ The district court then went on to conclude that "the defendants failed to present evidence which rebuts plaintiff's *prima facie* case." Accordingly, the court found that the plaintiff had shown that defendants violated Title VII.

The record shows that the defendants did present evidence in an effort to rebut plaintiff's prima facie case in that defendant Huddle articulated a nondiscriminatory reason for his failure to promote Ms. Grano. Defendant Huddle testified that he was familiar with Ms. Grano's qualifications and that he did not consider her qualified for the public relations position for which he hired Richard McClure. Mr. Huddle was extensively cross–examined. The district court ruled as follows:

Although the Court is not in a position to fully evaluate and compare the qualifications of the plaintiff and McClure for the specific functions and responsibilities of the public information position, the Court finds that the qualifications of the two individuals are not greatly dissimilar on their face. The Court finds that the plaintiff's evidence establishes a prima facie that she was qualified for the position of Public Information Specialist II. The evidence produced by the defendants

---

**3.** The plaintiff did not have the required three years of experience at a public relations job. However, the district court concluded that other related experience which the plaintiff had was sufficient to comply with the requirement.

to show that McClure was better qualified is largely generalized opinion based on unspecified factors. The Court finds, therefore, that the defendant's evidence fails to support a legitimate non–discriminatory purpose for the failure to afford the plaintiff an opportunity to fill the Public Information Specialist II position.

We think that the district court placed too great a burden on the defendants. The Supreme Court ruled on this very issue in *Board of Trustees of Keene St. College v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978), a case which was decided after the district court's decision in this case. In *Sweeney*, the Court discussed its rulings in *Furnco Construction Co. v. Waters, supra*, and *McDonnell Douglas v. Green, supra*. The Court explained that the only burden which an employer has to rebut plaintiff's prima facie case of discrimination is to "articulate some legitimate, non–discriminatory reason" for the failure to hire or promote. If the defendant does this, the plaintiff must then prove that the articulated reason is false or pretextual. Significantly, the Court explained that the employer is not under a burden of proving absence of discriminatory motive. The employer's burden is to *articulate* a non–discriminatory reason. *Sweeney, supra* at 24–25, 99 S.Ct. at 295–296. See *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1011–112 (1st Cir. 1979).[4]

### C.

Our conclusion is reinforced by a separate but related error in the district court's opinion. Plaintiff brought suit under Title VII and under 42 U.S.C. § 1983.[5] As indicated above, the district court ruled that the defendants were guilty of violating Title VII. At the same time, the court concluded that the defendants had not violated § 1983. The district court distinguished Title VII from § 1983 by ruling that under Title VII, the plaintiff did not have to prove discriminatory intent.[6] The Court then concluded that no discriminatory intent had been proven for § 1983 purposes:

> The plaintiff's burden under 42 U.S.C. § 1983 and the Fourteenth Amendment require a showing of discriminatory intent. *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). Plaintiff must also overcome the qualified immunity of public officials acting in good faith. *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). The Court finds the plaintiff has failed to meet her burden of proof with respect to either of these issues.

The district court overlooked that there are two separate theories under which a plaintiff can recover under Title VII. The two theories are disparate impact and disparate treatment.

---

**4.** In *Burdine v. Texas Department of Community Affairs*, 608 F.2d 563, 567 (5th Cir. 1979), *cert. granted*, 447 U.S. 920, 100 S.Ct. 3009, 65 L.Ed.2d 1112 (1980), the Fifth Circuit adhered to its previous position that an employer must refute a plaintiff's *McDonnell Douglas prima facie* case by proving nondiscriminatory reasons by a preponderance of the evidence. We agree with the Second Circuit that this position is contrary to *Sweeney*. See *Lieberman v. Gant*, 630 F.2d 60 (2d Cir. 1980).

**5.** Section 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in

equity, or other proper proceeding for redress."

**6.** The defendants on appeal argue that Congress has no authority to impose liability on a state agency absent a finding of discriminatory intent. For reasons outlined below, a finding of discriminatory intent is essential to sustain liability in this case, so it is unnecessary to decide this issue. However, we note that this court has recently rejected plaintiff's argument, as have four other courts of appeals. See *DPOA v. Young*, 608 F.2d 671, 689 n. 7 (6th Cir. 1979); *United States v. Comm. of Va.*, 620 F.2d 1018 (4th Cir. 1980); *Scott v. City of Anniston*, 597 F.2d 897, *cert. denied*, 446 U.S. 917, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1979); *Blake v. City of Los Angeles*, 595 F.2d 1367 (9th Cir. 1979), *cert. denied*, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980); *United States v. City of Chicago*, 573 F.2d 416 (7th Cir. 1978).

■ In a disparate impact situation, there is no issue present concerning whether the employer intended to discriminate. Rather, the issue is whether a neutral selection device–such as an I.Q. test–screens out disproportionate numbers of blacks or women. If the selection device does impact against a minority, the employer has the burden of proving that the device is required by business necessity, *i. e.*, showing that the selection device is job–related. Finally, if the employer does show that the selection device is job–related, the employee can demonstrate that there exist other selection devices which are also job–related but which do not screen out disproportionate numbers of minorities. *See e. g., Albermarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

■ A disparate treatment theory is very different from the above–stated disparate impact theory. A Title VII case alleging disparate treatment simply states that the defendant failed to hire or failed to promote a person because of his or her race, religion, national origin or sex. The reason why the employer acted as he did is crucial. Where a Title VII case is brought under the disparate treatment theory, the plaintiff must prove discriminatory intent.[7] *See Furnco, supra,* 433 U.S. at 577, 98 S.Ct. at 2949.

The Court outlined the distinction between disparate impact and disparate treatment in *Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977):

"Disparate treatment" is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. *See e. g. Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 265–266, 97 S.Ct. 555, 563–64, 50 L.Ed.2d 450.

Claims of disparate treatment may be distinguished from claims that stress "disparate impact." The latter involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. Proof of discriminatory motive, we have held, is not required under a disparate–impact theory. *Compare, e. g., Griggs v. Duke Power Co.,* 401 U.S. 424, 430–432, 91 S.Ct. 849, 853–54, 28 L.Ed.2d 158, with *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–806, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668. *Id.* at 335–36 n.15, 97 S.Ct. at 1854 n.15.

■ Plaintiff's case was brought and tried under a theory of disparate treatment. Simply stated, the plaintiff contended that she was not promoted because she was a woman. Thus, in order to make her case, the plaintiff had to prove by a preponderance of the evidence that the defendants intentionally discriminated against her.

■ The problem is that the district court made contradictory findings. It found that the defendants violated Title

---

**7.** Of course, proving that an employer refused to hire or promote because of a person's race or sex is difficult. It is for this reason that the Court placed the burdens of proof the way it did in *Furnco* and *McDonnell Douglas*, discussed above. *Furnco* and *McDonnell Douglas* both emphasize that intent is critical to a disparate treatment case. As the Court stated in *Furnco*, "[a] *McDonnell Douglas* prima facie showing is not the equivalent of a factual finding of discrimination, however. Rather it is simply proof of actions taken by the employer from which we *infer discriminatory animus* be-

cause experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." *Id.* at 579–80, 98 S.Ct. at 2950–2951. (emphasis added)

Because discriminatory intent is so difficult to prove by direct evidence, it is incumbent on a sensitive decisionmaker to analyze all of the surrounding facts and circumstances to see if discriminatory intent can be reasonably inferred. *See Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

VII, but then found that the defendants had not intentionally discriminated against the plaintiff. A plaintiff who alleges disparate treatment by a state employer is bringing essentially the same claim under Title VII as under § 1983. If there is liability under Title VII, there should be liability under § 1983. Similarly, if there was no discriminatory intent, there cannot be liability under either Title VII, on a disparate treatment theory, or § 1983.

The question remains how we should dispose of this appeal. The defendants urge that the district court's findings do not justify a finding of liability and that the action should be reversed. Plaintiff emphasizes that the district court did find that Title VII had been violated. Plaintiff also argues that the district court's finding of no intentional discrimination was clearly erroneous.

### III.

Because the district court applied erroneous legal standards in its opinion, we think that the best solution to this case is to vacate and remand to the district court for reconsideration in light of *Sweeney* and this opinion.[8] Additional fact–finding under the correct legal standard will greatly facilitate our appellate review. We intimate no view as to the merits at this time.[9]

We shall retain jurisdiction of this appeal during the limited remand.[10] After the district court makes its findings, this case will be resubmitted to this panel without additional oral argument. Leave is hereby granted for the filing of supplemental briefs within one week after the record on remand is certified to us.

VACATED AND REMANDED.

---

**8.** In vacating and remanding, we are in accord with *Sweeney*, where after Supreme Court reversal, the case was remanded to the district court for further consideration. *See Sweeney v. Board of Trustees of Keene St. College*, 604 F.2d 106 (1st Cir. 1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 733, 62 L.Ed.2d 731 (1980); *See also DPOA v. Young*, 608 F.2d 671, 692–98 (6th Cir. 1979) (remanding reverse discrimination case where district judge had applied an incorrect legal standard on Constitutional issues).

**9.** In her brief, the plaintiff argued that she was constructively discharged and requested reinstatement. At oral argument, however, counsel for plaintiff stated that the plaintiff no longer desired reinstatement. If the district court on remand finds intentional discrimination, it should reconsider the remedy in light of plaintiff's new position.

**10.** In case we are wrong in our view of *Burdine, supra* at n. 4, the district court should await the Supreme Court's decision in that case.