William W. **FOSTER**, Appellant,

v.

Donald **WYRICK**, Warden; Board of Classification & Placement; Board of Classification Assistants; Vestal and Maness, Appellees.

No. 86–1059.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1986.

Decided July 8, 1987.

---

Dennis R. Dow of Kansas City, Mo., for appellant.

Mark Edelman, Asst. Atty. Gen., Jefferson City, Mo., for appellees.

Before McMILLIAN, ARNOLD and WOLLMAN, Circuit Judges.

McMILLIAN, Circuit Judge.

William W. Foster appeals from a final judgment entered in the District Court for the Western District of Missouri in favor of the warden of the Missouri State Penitentiary (MSP), the MSP Board of Classification and Placement (Board) and individual members of the Board (collectively referred to as "MSP"). Appellant brought this action under 42 U.S.C. § 1983 alleging race discrimination in the assignment of inmate jobs. The district court granted MSP's motion for directed verdict on the Title VII and equal protection claims against all defendants except James Marcantonio. The jury returned a verdict in favor of Marcantonio on the equal protection and disparate treatment claims. For reversal, appellant argues that the district court erred in (1) granting a directed verdict on his disparate

impact claim and (2) withdrawing from the jury factual issues underlying his legal and equitable claims. For the reasons discussed below, we affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

Appellant is a black inmate serving a sentence for capital murder in MSP. MSP has a population of approximately 2100 inmates; about half are black. MSP requires most inmates to be employed in prison jobs. MSP concedes that it has no formal procedures for informing inmates of available jobs or for assessing inmates' qualifications for the jobs.

On December 2, 1981, appellant filed a *pro se* complaint in which he alleged that he and other black inmates were denied the more desirable and better-paid inmate jobs at the prison because of their race. Although appellant filed a first and second amended complaint, unfortunately, the complaint, even as amended, is not completely clear. Construed liberally, the complaint alleges that (1) appellant was denied clerk jobs at the prison because of his race, (2) other black inmates were denied jobs because of their race, (3) MSP lacks objective criteria for assigning jobs to prison inmates, and (4) MSP officials have failed to implement a system to prevent illegal discrimination and to correct existing discrimination in job placement. The district court and the parties understood these allegations to state a disparate impact claim and an intentional discrimination claim.[1]

At the close of appellant's case, the district court granted MSP's motion for directed verdict on the disparate impact claim. The district court stated that there "simply had not been any evidence to show a disparate impact submission." At the close of MSP's case, the district court granted MSP's motion for a directed verdict in favor of all the defendants except Marcantonio. The intentional discrimination claim

against Marcantonio was submitted to the jury, which returned a verdict in his favor.

The jury, in addition to advising the court of its verdict, submitted a note to the court (hand-written on a piece of yellow legal-size paper), stating:

[Appellant] was not discriminated against because he was black, but was not given a clerk's job because the job was a sensitive job and [appellant] was not considered trustworthy because of his conduct and violations previously. I feel from the evidence presented there is racial discrimination in the prison system.

In response to the district court's question, the jurors indicated that the note represented a consensus.

Appellant's motion for a new trial and judgment notwithstanding the verdict was denied. This appeal followed.

Appellant first argues that the district court erred in granting a directed verdict on his disparate impact claim. The essence of the disparate impact claim is that MSP's "current rules, regulations, practices, customs, and usages," although not facially discriminatory, operate in a racially discriminatory manner. The district court granted a directed verdict at the end of appellant's case. We affirm the district court's dismissal of this claim but on grounds different from those relied on by the district court.

Protection from racial discrimination in employment is provided for by the Equal Protection Clause of the Fourteenth Amendment and Title VII of the Civil Rights Act of 1964. We consider separately these two possible grounds for appellant's disparate impact claim.

■ "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis,* 426 U.S. 229,

---

1. The intentional discrimination claim is referred to as a disparate treatment claim, which normally refers to a Title VII claim. However, appellant also alleges in his complaint that MSP violated his right to equal protection. Appellant thus appears to base his intentional discrimina-

tion claim on Title VII and the Equal Protection Clause. We will refer to the claim as an "intentional discrimination" claim and will analyze it under Title VII and under the Equal Protection Clause.

239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976). Proof of discriminatory racial purpose is required to establish an equal protection violation; an official act is not unconstitutional solely because it has a racially disproportionate impact. *Id; see Arlington Heights v. Metropolitan Housing Development Corp,* 429 U.S. 252, 265–66, 97 S.Ct. 555, 563–64, 50 L.Ed.2d 450 (1977). Thus, appellant's allegation that MSP's employment practices and procedures have a discriminatory impact on black inmates fails to state a cause of action under the Equal Protection Clause, because there is no allegation of intentional discrimination.

By contrast, Title VII permits a claim for employment discrimination to be based on disparate impact alone. *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). Where a plaintiff alleges disparate impact discrimination, the issue is not whether the employer intended to discriminate, but whether a facially neutral employment practice adversely affects disproportionate numbers of minorities and, if so, whether the practice is justified by business necessity. *Grano v. Department of Development,* 637 F.2d 1073, 1081 (6th Cir.1980). Prior to seeking a judicial remedy for such discrimination, a Title VII plaintiff must file a discrimination charge with the Equal Employment Opportunity Commission (EEOC) within 180 days after the alleged unlawful employment practice. *Jennings v. American Postal Workers Union,* 672 F.2d 712, 714 (8th Cir.1982).

Appellant may not circumvent Title VII's filing requirement by utilizing § 1983 as the vehicle for asserting his Title VII claim. Section 1983 establishes no substantive rights; it is merely a vehicle for seeking a federal remedy for violations of federally protected rights. *Irby v. Sullivan,* 737 F.2d 1418, 1427–28 (5th Cir.1984) (*Irby* ); *see Maine v. Thiboutot,* 448 U.S. 1, 4–5, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980). Substantive rights created by the United States Constitution or by federal statutes may generally be asserted in a § 1983 action. The Supreme Court, however, has recognized two exceptions to the application of § 1983 to statutory viola-

tions. *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n.,* 453 U.S. 1, 19, 101 S.Ct. 2615, 2625, 69 L.Ed.2d 435 (1981) (*Middlesex* ). First, § 1983 is not available as a remedy for violations of a statute unless the statute creates a right secured by the laws of the United States within the meaning of § 1983. *Middlesex,* 453 U.S. at 19, 101 S.Ct. at 2625. Second, § 1983 does not afford a remedy where the governing statute provides an exclusive remedy for violations of its terms. *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981); *Irby,* 737 F.2d at 428. "When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate Congressional intent to preclude the remedy of suit under § 1983." *Middlesex,* 453 U.S. at 20, 101 S.Ct. at 2626; *see Irby,* 737 F.2d at 1428.

Title VII provides a comprehensive remedial system for the enforcement of rights created by Title VII. In *Great American Federal Savings & Loan Ass'n v. Novotny,* 442 U.S. 366, 378, 99 S.Ct. 2345, 2352, 60 L.Ed.2d 957 (1979), (*Novotny* ), the Supreme Court held that Title VII provides the exclusive remedy for a violation of § 704a of Title VII, the statutory section dealing with retaliatory discharge. The Court concluded that allowing a § 1985 remedy for retaliatory discharge would enable a complainant to "avoid most if not all these 'detailed and specific provisions' of Title VII." *Id.* (citation omitted). "Unimpaired effectiveness can be given to the plan put together by Congress in Title VII only by holding that deprivation of a right created by Title VII cannot be the basis for a cause of action under § [1983]." *Id.* at 378, 99 S.Ct. at 2352.

We are persuaded that the same rationale which bars a § 1985 action based on a Title VII retaliatory discharge claim is applicable to a Title VII disparate impact claim. Disparate impact claims, like the retaliatory discharge claims in *Irby* and *Novotny,* were created by Title VII and are subject to the requirement that the plaintiff file a charge with the EEOC before

seeking judicial review. Congress' express intent that plaintiffs seek voluntary conciliation of their Title VII claims would be frustrated if a plaintiff, after failing to file such a complaint, could bring the same claim in federal court under § 1983. We thus conclude that a Title VII disparate impact claim may not be asserted in a § 1983 action. On this basis, the district court properly dismissed appellant's Title VII disparate impact claim.

Appellant next contends that the district court erred in refusing to submit to the jury factual issues common both to his disparate impact claim and his intentional discrimination claims. Appellant contends that the common factual issue underlying both claims was the presence of discriminatory employment practices and procedures at MSP. He argues that the district court should have submitted the intentional discrimination claim to the jury first. After the jury determined the common factual issues, the district court should have then decided the disparate impact claim. The court would be bound by the jury's factual determinations.

MSP contends that the district court correctly refused to submit the disparate impact claim to the jury because appellant failed to make a submissible case. They do not address appellant's argument that the jury was not permitted to consider certain evidence common to both the disparate impact and intentional discrimination claims.

■ Appellant's intentional discrimination claim, like his disparate impact claim, is based on the Equal Protection Clause and Title VII. Appellant may not, as we previously decided in reference to his disparate impact claim, assert a Title VII disparate treatment claim in a § 1983 action. Nor may he maintain a Title VII action because he failed to file a charge with the EEOC within 180 days of the alleged discriminatory incidents. We thus consider only appellant's claim of intentional discrimination based on the Equal Protection Clause.

Proof of an intentional discrimination claim, in most instances, is based on circumstantial evidence. Only rarely is there direct evidence of an employer's discriminatory intent. The employer will almost always offer a non-discriminatory reason for the personnel action taken. Plaintiff must then establish that the asserted reason is a pretext. One way to show pretext is to present evidence that blacks, for example, are underrepresented in the employer's workforce, that this underrepresentation has existed over a period of time, and that qualified blacks have applied and been denied employment during the same period. *See, e.g., Grano v. Department of Development*, 637 F.2d at 1081.

■ In the present case, the district court prevented appellant from undertaking to prove his equal protection claim by this method. Initially the district court limited evidence of employment discrimination at MSP to the three-year statute of limitations period. Appellant advised the court that he was offering evidence of discrimination prior to the limitations period to establish that MSP had a pattern of refusing to hire blacks for clerk jobs. The district court construed the statute of limitations to not only bar recovery for a claim based on an incident occurring prior to the limitations period, but also to bar any circumstantial evidence of racial discrimination occurring prior to the limitations period. The district court also strictly limited appellant's access to information concerning clerk positions; the court ordered MSP to provide information only about the two clerk jobs appellant could prove he applied for. Consistent with these actions, the district court restricted appellant's closing argument; appellant was not permitted to refer to MSP's employment patterns or practices. Finally, the district court instructed the jury that MSP policies and procedures "have nothing to do with this [intentional discrimination] claim. The question is whether there was discrimination against [appellant]."

After carefully reviewing the record, we conclude that the district court erred in restricting the evidence which the jury could consider in determining appellant's equal protection claim. The district court in effect limited the jury to considering

only direct evidence of discrimination. This was an abuse of discretion and reversible error. We therefore reverse the district court's dismissal by directed verdict and the judgment entered on the jury verdict of appellant's equal protection claim, and remand the case to the district court for a new trial on the equal protection claim.

On remand, the district court should appoint counsel to assist appellant in the retrial of the equal protection claim. This will free the district court from the burdensome task of guiding appellant through the intricacies of a trial. Both the trial of this case and appellate review of the case was difficult because counsel was not available to assist at the trial level. If appellant prevails on his equal protection claim, the district court should then consider whether equitable relief is necessary and appropriate.

Accordingly, we affirm the district court's dismissal of appellant's Title VII claims, reverse the dismissal of appellant's equal protection claim, and remand the case to the district court for further proceedings consistent with this opinion.