# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2561

_____

| | | |
|---|---|---|
| Crystal Henley, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Sgt. Bill Brown, In his Individual | * | |
| and Official Capacity; Kansas City | * | |
| Missouri Board of Police | * | |
| Commissioners; Patrick McInerney, | * | |
| Acting Member of the Kansas City, | * | |
| Missouri Board of Police | * | |
| Commissioners; Alvin Brooks, Acting | * | |
| Member of the Kansas City, Missouri | * | |
| Board of Police Commissioners; | * | |
| Lisa Pelofsky, Acting Member of the | * | Appeal from the United States |
| Kansas City Missouri Board of Police | * | District Court for the Western |
| Commissioners; Angela Wasson-Hunt, | * | District of Missouri. |
| Acting Member of the Kansas City, | * | |
| Missouri Board of Police | * | |
| Commissioners; Mark Funkhouser, | * | |
| Mayor, Acting Member of the Kansas | * | |
| City, Missouri Board of Police | * | |
| Commissioners; Officer Michael | * | |
| Throckmorton, In his Individual & | * | |
| Official Capacity; Officer Dwight | * | |
| Parker, In his Individual & Official | * | |
| Capacity; Officer John Connor, An | * | |
| Alias Name For an Instructor at the | * | |
| Police Academy (In his Individual & | * | |
| Official Capacity); Officer John Doe, | * | |

In his Individual & Official Capacity;     *
Chief James Corwin, In his Official        *
Capacity,                                  *
                                           *
            Defendants - Appellees.        *

                    _____

               Submitted: February 15, 2012
                    Filed: July 26, 2012

                    _____

Before LOKEN, BYE, and MELLOY, Circuit Judges.

                    _____

BYE, Circuit Judge.

        Crystal Henley brought this action under 42 U.S.C. § 1983 against the Kansas City Board of Police Commissioners and its members, Chief of Police Jim Corwin, and certain individual police officers, alleging constitutional violations under the Fourth and Fourteenth Amendments of the Constitution. The district court dismissed the action for failure to exhaust administrative remedies, reasoning Title VII of the Civil Rights Act of 1964 provides the exclusive remedy for Henley's claims and she could not circumvent the Act's procedural requirements by solely pleading constitutional violations under section 1983. We reverse and remand for further proceedings.

## I. BACKGROUND

### A. Facts.[1]

In May 2005, Henley enrolled in the Kansas City Police Academy ("Academy") and began her training for becoming a police officer. The Academy is located in Jackson County, Missouri, and is staffed and operated by members of the Kansas City Police Department. Both the trainees and the trainers at the Academy are primarily male. Henley alleges during her time at the Academy four male trainers in particular—Michael Throckmorton, Bill Brown, Dwight Parker, and an officer, allegedly "John Conner"—discriminated against, sexually harassed, and physically assaulted her because of her gender while acting under color of state law. Henley's complaint provides the following examples in support of these allegations.

In late May or early June 2005, shortly after Henley enrolled at the Academy, Officer Michael Throckmorton asked Henley to conduct a "tactical recovery" exercise for thirty-five to forty minutes in a specific manner. None of the male trainees were asked to conduct the exercise in the same manner. Henley sustained a torn quad muscle as a result, suffered leg convulsions, and developed a large knot in her leg.

In July 2005, Throckmorton asked Henley to repeatedly jump over a crack in the gym mat during another training exercise. The commands lasted for the entire class session. As Henley performed the jumps, Throckmorton stared at her from a very close distance, concentrating on her breasts. At the end of the exercise,

---

[1]"[W]e recite the facts as alleged in the complaint, viewing them in the light most favorable to the plaintiff[.]" Davenport v. Farmers Ins. Grp., 378 F.3d 839, 841 (8th Cir. 2004). We take all factual allegations as true and construe all reasonable inferences in the plaintiff's favor. Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 317 (8th Cir. 2004).

Throckmorton wrote Henley up for not jumping high enough, even though her male classmates told her afterwards they could not have jumped as high as she did.

The complaint further alleges Throckmorton disciplined Henley differently because of her sex by kicking her in the back for allegedly having bad posture during the performance of a push-ups exercise and by pulling her by the hair to a sit-up position during the performance of a sit-ups exercise for allegedly not having her hands "clasped tight around her head." Complaint ¶ 18. Throckmorton also "screamed" at Henley on multiple occasions for allegedly failing to perform certain exercises; for being a "lazy quitter," even though thirty male trainees had quit before she did; and for being a "chicken" for staying home after Sergeant Bill Brown demanded she go home because of her "raspy voice." Id. at ¶¶ 15, 17, 19.

In September 2005, Throckmorton asked Henley to close her eyes during a training session. "While her eyes were closed, Throckmorton administered a brachial hit that dislocated her shoulder[.]" Id. at ¶ 19. When she did not show any pain, Throckmorton threatened to hit her again. Henley had to seek medical assistance for the injury she sustained as a result of the hit.

A month later, as an alleged part of training, Throckmorton used pepper spray on Henley's face. He used a new can of spray to allow for a high stream of carbon monoxide. The high stream opened Henley's right eye, causing damage to it. Henley again had to seek medical assistance for the injury.

Following the pepper spray incident, Henley left for the women's locker room to take a shower. As she was coming out of the shower, along with another female trainee, Brown entered the room and saw both of them fully undressed. Brown proceeded to leave the door to the locker room open as to allow other male officers to see the women.

In addition to the locker room incident, Henley alleges Brown came to the shooting range during a training exercise with one purpose in mind: to "rant, rave, and intimidate" her. Id. at ¶ 14. "The ranting was so bad" Sergeant Conroy had to step out of his office and summon Brown inside. Id. Brown's harassment also consisted of telling Henley's training partners to work against her during the performance of certain exercises, screaming she "had a loaded weapon and had gone crazy" before an incoming class, and writing her up for staying home sick, although it was him who had sent her home in the first instance for having "a raspy voice." Id. at ¶¶ 15, 20, 21.

In October 2005, Henley participated in a training exercise designed to teach trainees how to apply a choke hold to restrain an attacker. Henley was chosen to be the attackee in a simulated attack, which involved another male officer at the Academy. She applied the hold as directed. After she released the hold, however, the male officer, allegedly "John Conner," attacked Henley from behind and physically assaulted her. It took four other officers to break the attack. Henley contends she attempted to report the incident, "but command staff did not listen." Id. at ¶ 24.

As to Officer Dwight Parker, Henley asserts that in June 2005 Parker talked to her and another female trainee about the size of their breasts. Parker allegedly told Henley it would be difficult to take her seriously as a police officer because "her button down shirt would pucker" and reveal her bra. Id. at ¶ 11. Parker further stated he would work hard to assure Henley does not graduate from the Academy and "had taken a bet to see how fast 'they' could get rid of her." Id. at 12. According to Henley, Parker suggested she is better suited to be "some rich Johnson [C]ounty man's wife" than a police officer. Id.

On November 8, 2005, Parker and Brown provided Henley with a memorandum, explaining their reasons as to why Henley should not graduate from the Academy. Henley was subsequently forced to leave the Academy and was unable

to complete her training to become a police officer with the Kansas City Police Department.

## B.  Procedural Posture

On October 15, 2010, Henley brought this action under 42 U.S.C. § 1983 alleging violations of her rights under the Fourth and Fourteenth Amendments of the Constitution.  Specifically, in her second amended complaint Henley asserted the following constitutional violations:  (1) gender discrimination against Conner and Throckmorton, in violation of the Fourteenth Amendment; (2) sexual harassment and violation of bodily integrity against Brown, in violation of the Fourth and Fourteenth Amendments; (3) sexual harassment hostile work environment against Parker, in violation of the Fourteenth Amendment; and (4) "failure to instruct, supervise, control, and discipline" against the Kansas City Board of Police Commissioners, its individual members, and Chief of Police Jim Corwin.  Defendants moved to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]  The district court granted the motion,[3] concluding Henley had failed to exhaust her administrative remedies, as required by Title VII, and was therefore precluded from suing in federal court.  The district court explained that while Henley could theoretically bring her gender discrimination claims under the Equal Protection Clause of the Fourteenth Amendment, the claims were also prohibited by Title VII and she could not "circumvent Title VII requirements by only pleading violations of the Equal Protection Clause under § 1983."   Order Granting Mot. to Dismiss,

---

[2]On February 1, 2011, Henley filed a second amended complaint.  Defendants Brown, Throckmorton, and Parker, along with the Board of Police Commissioners and its members (collectively, "Defendants"), moved to dismiss on February 22, 2011.  Defendant Corwin filed his motion to dismiss on May 25, 2011.

[3]The district court granted Defendants' motion to dismiss on April 29, 2011. The court granted Police Chief Corwin's separate motion to dismiss on July 6, 2011.

April 29, 2011, at 9. Accordingly, the court dismissed the action for failure to state a claim upon which relief may be granted.

Henley subsequently filed a motion to amend or alter the judgment under Federal Rule of Civil Procedure 59(e), arguing the district court manifestly erred in its application of the law by concluding the procedural requirements of Title VII applied to her constitutionally-grounded claims brought under section 1983. The district court denied the motion on the ground Title VII provides the exclusive remedy for Henley's gender discrimination claims and the law in our circuit indicates "a plaintiff bringing a 42 U.S.C. § 1983 claim alleging employment discrimination must first proceed through Title VII's requisite administrative remedies before filing suit in federal court when Title VII provides for the right asserted." Order Denying Mot. to Alter J., June 30, 2011, at 2. Henley timely appealed.[4]

## II. DISCUSSION

On appeal, Henley argues the district court erred in concluding Title VII provides the exclusive remedy for gender discrimination and dismissing her constitutionally-grounded claims brought under section 1983 for failure to comply with the Title VII's procedural requirements.

### A. Standard of Review

An "appeal from the denial of a Rule 59(e) motion allows challenge of the underlying ruling that produced the judgment—in this case [dismissal for failure to

---

[4]Henley appeals only the district court's June 30, 2011, order denying her motion to amend or alter the judgment dismissing Henley's claims against the Defendants. See Notice of Appeal, Appellant's App'x at 189. Henley does not appeal the district court's July 6, 2011, order granting Police Chief Corwin's motion to dismiss.

state a claim under Rule 12(b)(6).]" Prince v. Kids Ark Learning Ctr., 622 F.3d 992, 994 (8th Cir. 2010) (per curiam). "We review *de novo* the district court's dismissal of an action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." O'Neil v. Simplicity, Inc., 574 F.3d 501, 503 (8th Cir. 2009). Moreover, where the Rule 59(e) motion seeks review of a purely legal question, "[l]ittle turns . . . on whether we label the review of this particular question abuse of discretion or *de novo*, for an abuse-of-discretion standard does not mean a mistake of law is beyond appellate correction." Koon v. United States, 518 U.S. 81, 100 (1996). Accordingly, while we generally review the denial of a Rule 59(e) motion for abuse of discretion, Miller v. Baker Implement, Co., 439 F.3d 407, 414 (8th Cir. 2006), we will review *de novo* the dismissal of Henley's section 1983 action for failure to comply with Title VII's procedural requirements. See, e.g., Computrol, Inc. v. Newtrend, L.P., 203 F.3d 1064, 1070-71 (8th Cir. 2010) (applying a *de novo* review to a contract question in an appeal from the denial of a Rule 59(e) motion); Anderson v. Family Dollar Stores of Ark., Inc., 579 F.3d 858, 861-62 (8th Cir. 2009) (reviewing underlying summary judgment *de novo*).

**B.     The Relationship Between Title VII and Section 1983**

Characterizing Henley's employment discrimination claims as gender discrimination claims for which Title VII provides the exclusive remedy, the district court concluded Henley was required to comply with the Act's procedural requirements before seeking judicial review and could not escape Title VII's remedial scheme by only pleading constitutional violations under section 1983. As a preliminary matter, we must therefore determine whether Title VII provides the exclusive remedy for Henley's discrimination claims precluding her from asserting the claims under section 1983.

Section 1983 provides, in relevant part:

> Every person who, under color [of law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Standing alone, section 1983 does not establish any substantive rights. Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617 (1979). Rather, it simply serves as a vehicle for "vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). Accordingly, an underlying constitutional or statutory violation is a predicate to liability under section 1983.

However, not all statutory violations may be remedied through section 1983. The Supreme Court has recognized two exceptions to the availability of section 1983 as a remedy for vindicating statutory rights. Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 19 (1981). First, the Court has explained section 1983 does not afford a remedy for statutory violations unless the statute creates "rights, privileges, or immunities" within the meaning of section 1983. Id. Second, the Court has stated that "[w]hen the remedial devices provided in a particular [statute] are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." Id. at 20. In other words, section 1983 does not afford a remedy for statutory violations where "the governing statute provides an exclusive remedy for violation of its terms." Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 28 (1981) (internal quotation marks and citation omitted). And while the Supreme Court has yet to decide whether Title VII provides the exclusive remedy for discriminatory employment practices, thereby

-9-

precluding claims under section 1983, the Court's jurisprudence on the relationship between Title VII and other statutory remedies is instructive to our present inquiry.

In a line of cases, beginning with Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974), the Court has recognized generally that Title VII does not preclude a public employee from seeking other remedies. In Alexander, for example, the Court concluded a private employee does not forfeit his private cause of action under Title VII if he first purses his grievance under a collective-bargaining agreement's non-discrimination clause. 451 U.S. at 49. The Court reasoned: "[T]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both applicable state and federal statutes[,] [including section 1981 and 1983]. The clear inference is that Title VII was designed to supplement rather than supplant, existing laws and institutions relating to employment discrimination." Id. at 47-49 & n.7. Similarly, in Johnson v. Railway Express Agency, 421 U.S. 454 (1975), the Court observed that "[d]espite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief." 421 U.S. at 459. Rather, the Court stated, "the remedies available to the individual under Title VII are co-extensive with the individual's right to sue under . . . s 1981, and . . . the two procedures augment each other and are not mutually exclusive." Id. (internal quotation marks and citation omitted).

Further, in Brown v. General Services Administration, 425 U.S. 820 (1976), the Court considered the narrow question of "whether s 717 of the Civil Rights Act of 1964 provides the exclusive judicial remedy for claims of discrimination in federal employment." Id. at 821. Relying on the legislative history of section 717, the section which added federal employees to Title VII's coverage, the Court concluded Congress intended to create "an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." Id. at 829. The Court

-10-

noted federal employees could, of course, seek review of their employment discrimination claims in federal district court, but they were required to comply with the procedural requirements set forth in section 717 before bringing suit.  Id. at 832.

Similarly, when presented with the narrow issue of whether section 704(a) of Title VII provides the exclusive remedy for retaliatory discharge claims in violation of section 704(a), the Court has held Title VII precludes an employee from seeking redress elsewhere.  Great Am. Fed. Savs. & Loan Ass'n v. Novotny, 442 U.S 366, 378 (1979).  The specific issue before the Court in Novotny was "whether a person injured by a conspiracy to violate § 704(a) of Title VII" may seek redress for his injury through the remedial framework of section 1985(3).  Id. at 372.  The Court's inquiry focused largely on the fact section 1985(3) is a "purely remedial statute, providing a civil cause of action when *some otherwise defined federal right*—to equal protection of the laws or equal privileges and immunities under the laws—is breached by a conspiracy."  Id.  at 376.  But in the Court's opinion the right asserted under section 704(a) of the Act was not an "otherwise defined federal right" because it "did not even arguably exist before the passage of Title VII."  Id. at 376-77.  The Court thus concluded the right asserted under section 704(a) was not an "independent" right for purposes of bringing a section 1985(3) action, and held the "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)."  Id. at 378.

We discern the following principles from the Court's attempt to reconcile the remedies provided for in Title VII with other statutorily available remedies.  First, Title VII provides the exclusive remedy for violations of its own terms and an employment discrimination plaintiff asserting the deprivation of rights created by Title VII must comply with the Act's procedural requirements before seeking judicial review.  Second, a plaintiff may not invoke a purely remedial statute, such as section 1985(3), to redress a violation of a right conferred only by Title VII.  However, when the employer's conduct violates not only rights created by Title VII, but also rights

-11-

conferred by an independent source, Title VII supplements, rather than supplants, existing remedies for employment discrimination.

The law in our circuit is consistent with these principles. The case that best illustrates this consistency is Foster v. Wyrick, 823 F.2d 218 (8th Cir. 1987). In Foster, a black inmate brought a section 1983 action alleging race discrimination in the assignment of inmate jobs under a disparate impact theory. Acknowledging both the Equal Protection Clause of the Fourteenth Amendment and Title VII confer an individual a right to be free of racial discrimination in employment, we considered whether any of these two independent grounds for relief supported appellant's disparate impact claim. Id. at 220. We rejected appellant's constitutional claim, explaining an act does not violate the Equal Protection Clause simply because it has a racially disproportionate impact. Id. at 220-21. Instead, to amount to a constitutional violation, the act must be committed with a "discriminatory racial purpose." Id. at 221. In the absence of any allegations of intentional discrimination, we therefore concluded the Equal Protection Clause did not provide a ground for relief for appellant's section 1983 race discrimination claim. Id.

Recognizing, however, "Title VII permits a claim for employment discrimination to be based on disparate impact alone," we next considered whether appellant could assert his Title VII disparate impact claim within the remedial framework of section 1983. Id. Guided by the Supreme Court's decision in Novotny, we held "[d]isparate impact claims, like retaliatory discharge claims . . . , were created by Title VII" and could not therefore be the basis for a cause of action under section 1983. Id. at 221-22. We further held that because Title VII provides the exclusive remedy for violations of its own terms, appellant was required to exhaust his administrative remedies before seeking judicial review of his disparate impact claim and could not "circumvent Title VII's filing requirements by utilizing § 1983 as the vehicle for asserting his *Title VII claim*." Id. at 221-22 (emphasis added). Thus, while our holding in Foster precludes a plaintiff from asserting violations of rights

-12-

created by Title VII as the basis for a section 1983 action, it does not—by any means—preclude a plaintiff from utilizing section 1983 as a vehicle for vindicating rights independently conferred by the Constitution. On the contrary, the implication of Foster is that had appellant alleged the employer's conduct amounted to intentional race discrimination in violation of the Equal Protection Clause, he could have asserted his constitutionally-grounded discrimination claim under section 1983.

We therefore conclude that while Title VII provides the exclusive remedy for employment discrimination claims created by its own terms, its exclusivity ceases when the employer's conduct also amounts to a violation of a right secured by the Constitution. See Tyler v. Univ. of Ark. Bd. of Trs., 628 F.3d 980, 986 (8th Cir. 2011) (explaining that "[a]lthough section 704(a) of Title VII may not be the basis for a retaliatory discharge claim in a § 1983 action, § 1983 provides a vehicle for redressing claims of retaliation on the basis of the First Amendment") (internal quotation marks and citation omitted); Hervey v. City of Little Rock, 787 F.2d 1223, 1233 (8th Cir. 1986) (stating an employment discrimination plaintiff may recover under section 1983 if she proves the alleged gender discrimination violated her equal protection rights under the Fourteenth Amendment). All other circuits to have considered the issue have reached the same conclusion. See, e.g., Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 117-18 (2d Cir. 2004); Booth v. Maryland, 327 F.3d 377, 382-83 (4th Cir. 2003); Thigpen v. Bibb Cnty., Ga., Sheriff's Dep't, 223 F.3d 1231, 1239 (11th Cir. 2000); Weberg v. Franks, 229 F.3d 514, 522 (6th Cir. 2000); Notari v. Denver Water Dep't, 971 F.2d 585, 587 (10th Cir. 1992); Johnston v. Harris Cnty. Flood Control Dist., 869 F.2d 1565, 1575-76 (5th Cir. 1989); Ratliff v. City of Milwaukee, 795 F.2d 612, 624 (7th Cir. 1986). Moreover, because the availability of section 1983 as a remedy for employment discrimination turns on the independence of the right's source, rather than on the distinct factual basis of the Title VII and section 1983 claims, we further conclude an employment discrimination plaintiff asserting a violation of a constitutional right may bring suit under section 1983 alone, without having to plead concurrently a violation of Title VII and comply

-13-

with the Act's procedural requirements. See Back, 365 F.3d at 117 (holding a plaintiff alleging a constitutional claim of gender discrimination "may bring suit under § 1983 alone, and is not required to plead concurrently a violation of Title VII); Notari, 971 F.2d at 587 (holding "a Title VII plaintiff who alleges that his equal protection rights were violated, and requests remedies for those alleged violations under § 1983 has stated an independent basis for [his § 1983] claim . . . even if the claims arise from the same factual allegations and even if the conduct alleged in the § 1983 claim also violates Title VII") (internal quotation marks and citation omitted); Johnston, 869 F.2d at 1575-76 (recognizing Title VII does not provide the exclusive remedy for all employment discrimination claims, even if the Title VII and section 1983 claim factually overlap); Ratliff, 795 F.2d at 624 (emphasizing "[a] plaintiff may sue her state government employer for violations of the Fourteenth Amendment through section 1983 and escape Title VII's comprehensive remedial scheme, even if the same facts would suggest a violation of Title VII") (internal quotation marks and citation omitted).

## C.    Disposition

Although "somewhat conclusory and far from artful," Jennings v. Am. Postal Workers Union, 672 F.2d 712, 716 (8th Cir. 1982), we construe Henley's complaint as alleging a violation of her right to be free from the use of excessive force under the Fourth Amendment inasmuch as she is asserting that certain individual defendants used "unlawful and unreasonable" force against her while acting under color of state law. See Moore v. Indehar, 514 F.3d 756, 759 (8th Cir. 2008) ("The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person . . . [and] [a] section 1983 action is supported when a [state actor] violates this constitutional right.") (internal quotation marks and citation omitted). We further construe the complaint as alleging a violation of Henley's right to be free from gender-based discrimination inasmuch as she is asserting defendants, as state actors, intentionally discriminated against and

-14-

sexually harassed her because of her gender. See Ottman v. City of Independence, Mo., 341 F.3d 751, 756 (8th Cir. 2003) (holding "intentional gender discrimination in public employment by persons acting under color of state law violates the Equal Protection Clause of the Fourteenth Amendment and is actionable under section 1983"); Moring v. Ark. Dep't of Corr., 243 F.3d 452, 455 (8th Cir. 2001) ("Intentional sexual harassment by persons acting under color of state law violates the Fourteenth Amendment and is actionable under § 1983."). To the extent that Henley's complaint asserts the violation of rights secured by the Constitution and committed by persons acting under color of state law, we conclude the district court erred in dismissing her section 1983 action for failure to comply with Title VII's procedural requirements. See, e.g., Notari, 971 F.2d at 588 (holding plaintiff's allegations defendant acted under color of state law to violate rights secured by the Fourteenth Amendment are sufficient to defeat summary judgment of plaintiff's section 1983 claim); cf. Jennings, 672 F.2d at 716 (concluding allegations employer failed to process plaintiff's grievance because of her race sufficient to withstand dismissal of plaintiff's section 1981 action).

We decline to address whether the factual allegations in Henley's complaint are sufficient to establish a section 1983 claim that is plausible on its face. The district court did not reach the merits of the claims below and neither party has briefed the issue on appeal. Prudence thus compels us to remand the action to the district court for consideration of the issue in the first instance. See, e.g., Red River Freethinkers v. City of Fargo, 679 F.3d 1015, 1028 (8th Cir. 2012) (declining to reach the merits of the claims where the district court did not rule on the merits and neither party addressed the merits in its brief); Dodd v. United States, 614 F.3d 512, 518 (8th Cir. 2010) (remanding to the district court to address the merits of the claims where neither party briefed the merits to the court and the district court did not address the merits in the first instance); Alliant Techsystems, Inc. v. Marks, 465 F.3d 864, 873 (8th Cir. 2006) ("Because the district court did not decide the merits of these claims, which are heavily fact-based, we decline to consider them in the first instance.").

## III.   CONCLUSION

The judgment dismissing the action is reversed, and the case remanded for further proceedings consistent with this opinion.

_____