STATE of Alaska, DEPARTMENT OF COMMERCE, COMMUNITY AND ECONOMIC DEVELOPMENT, DIVISION OF INSURANCE, Appellant,

v.

PROGRESSIVE CASUALTY INSURANCE COMPANY; Progressive Specialty Insurance Company; and Progressive Northwestern Insurance Company, Appellees.

No. S–12188.

Supreme Court of Alaska.

Aug. 17, 2007.

---

Nathaniel B. Atwood, Assistant Attorney General, Anchorage, and David W. Márquez, Attorney General, Juneau, for Appellant.

Gary A. Zipkin and Christina A. Rankin, Guess & Rudd, P.C., Anchorage, for Appellees.

Before: FABE, Chief Justice, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

Alaska Statute 21.36.460(d)(1) forbids insurers from failing to renew or, at renewal,

underwriting or rating a personal insurance policy, "based in whole or in part on a consumer's credit history or insurance score." Casualty insurers asked the Alaska Division of Insurance to permit them to "freeze" their insureds' credit scores at policy initiation and use their insureds' frozen credit scores at policy renewal to make underwriting risk group determinations. The division rejected this proposal. On appeal, the superior court reversed. Because the insurers' proposal violates AS 21.36.460(d)(1), we reverse and remand for reinstatement of the division's order.

## II. FACTS AND PROCEEDINGS

In 2004 Progressive Casualty Insurance Company and two other Progressive companies [1] submitted to the Alaska Division of Insurance a "re-marketing rule" proposal that described the way in which Progressive wanted to place its consumers into various "underwriting risk groups" (also known as "markets"). Progressive wanted to use one of two methods to establish a consumer's underwriting risk group, depending on whether the consumer was requesting a new policy or renewing an existing policy.

For new policies, Progressive would establish a consumer's underwriting risk group based on two factors: the consumer's "credit tier" [2] and the consumer's "pre-credit tier." Per Progressive's proposal, the consumer's credit tier would be based on the consumer's credit score, which would then be "frozen" for use in subsequent policy renewals. The consumer's pre-credit tier would be based on all non-credit variables, such as "whether the consumer had prior insurance and, if so, the prior insurance limits."

For policy renewals, Progressive would establish the consumer's underwriting risk group based on the consumer's frozen credit tier and Progressive's "re-evaluation" of the consumer's pre-credit tier. Progressive's proposed use of consumers' frozen credit scores at renewal gives rise to the main controversy of this case.

The division rejected Progressive's proposal on the ground that Progressive's continued use of credit scores at renewal would violate AS 21.36.460(d)(1)'s prohibition on again underwriting or rating based in whole or in part on a consumer's credit history. Progressive appealed to the superior court, which allowed Progressive to supplement the record, retained jurisdiction, and remanded the case to the division for reconsideration. Division Director Linda Hall agreed on remand with the division's initial rejection of Progressive's proposal. She issued an order that stated that Progressive's proposal violated AS 21.36.460(d)(1) as well as three other provisions of the Insurance Code that prohibit arbitrary and unfair discrimination. [3] After oral argument, the superior court reversed Director Hall's order.

The division asks us to reverse the superior court's ruling.

## III. STANDARD OF REVIEW

■ The superior court acted as an intermediate court of appeal. When a superior court acts as an intermediate court in an administrative matter, we directly review the agency's decision. [4]

■ The division does not argue that its interpretation of AS 21.36.460 implicates its expertise. We review an agency's statutory interpretation that does not implicate its expertise or the determination of fundamental policies under the "independent judgment standard." [5] Using our independent judgment, our goal is to "give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to

1. Progressive Specialty Insurance Company and Progressive Northwestern Insurance Company were the other two companies. We refer to all three Progressive companies collectively as "Progressive."

2. Progressive sometimes refers to the credit tier as the "financial responsibility" tier.

3. See AS 21.39.030; AS 21.36.090(c), .120(c).

4. Gwich'in Steering Comm. v. State, Office of the Governor, 10 P.3d 572, 577 (Alaska 2000).

5. Nat'l Bank of Alaska v. State, Dep't of Revenue, 642 P.2d 811, 815 (Alaska 1982).

others."[6] Although some weight should still be given to the agency's interpretation, especially if the agency's interpretation is longstanding,[7] we will interpret the statute in question by looking to the meaning of the statute's language, its legislative history, and its purpose.[8]

## IV. DISCUSSION

### A. Progressive's Proposal Violates AS 21.36.460(d)(1).

█ Director Hall ruled that Progressive's proposal violates AS 21.36.460(d)(1). Progressive argues that Director Hall's interpretation contradicts both the statute's plain meaning and its legislative history.

Alaska Statute 21.36.460(d)(1) states that an insurer may not

fail to renew or, at renewal, again underwrite or rate a personal insurance policy based in whole or in part on a consumer's credit history or insurance score; the prohibition in this paragraph against underwriting or rating a personal insurance policy at renewal may be waived by the consumer; waiver allowed under this paragraph must occur at each renewal. . . .

The division argues that because Progressive would leave a consumer in the same credit tier based on that consumer's frozen credit score, Progressive would " 'in part' be using the consumer's credit history in the rating/underwriting process at renewal." Progressive contends that its proposal does not violate the statute because, in the statute's words, Progressive would not be "again underwriting or rating" at all; instead, it would be "leav[ing]" the consumer in the same credit tier based on that consumer's frozen credit score data.

### 1. The plain language of AS 21.36.460(d)(1) prohibits Progressive's proposal.

Progressive argues that underwriting, by definition, requires an "affirmative action." Progressive contends that because it is proposing to merely maintain a consumer's status in the same underwriting credit tier or rate classification, Progressive would not be taking an affirmative action and thus not again "underwriting" or "rating." The division responds by arguing that there is "no way to use credit scoring (or any other rating or eligibility factor) at renewal other than for underwriting or rating." This is proved, the division argues, by Progressive's concession that consumers' rates will be impacted if Progressive removes their credit scores at renewal.

█ Using our independent judgment, we interpret Alaska Statutes according to reason, practicality, and common sense, "taking into account the plain meaning and purpose of the law as well as the intent of the drafters."[9] Words that have not acquired a peculiar meaning, by virtue of statutory definition or judicial construction, are to be construed in accordance with their common usage.[10]

Alaska Statute 21.36.460 does not define the terms "again underwrite" or "again rate," and the parties do not cite any cases in which we have defined those terms. "Underwrite," however, is a verb with two common meanings, depending on the context in which it is used. Thus, "underwriting" has been defined as "the process by which an insurer decides whether, and at what price, the insurer will accept a given risk."[11] Under this first definition, the Federal Trade Commis-

---

6. *Gov't Employees Ins. Co. v. Graham–Gonzalez,* 107 P.3d 279, 284 (Alaska 2005) (citing *Muller v. BP Exploration (Alaska) Inc.,* 923 P.2d 783, 787–88 (Alaska 1996)).

7. *Nat'l Bank of Alaska,* 642 P.2d at 815 (citing *State, Dep't of Revenue v. Debenham Elec. Supply Co.,* 612 P.2d 1001, 1003 n. 6 (Alaska 1980)).

8. *Gov't Employees Ins. Co.,* 107 P.3d at 284 (citations omitted).

9. *Grimm v. Wagoner,* 77 P.3d 423, 427 (Alaska 2003) (citation omitted).

10. *Gov't Employees Ins. Co.,* 107 P.3d at 284 (citations omitted); *see also* AS 01.10.040 ("Words and phrases shall be construed according to the rules of grammar and according to their common and approved usage.").

11. 28 Eric Mills Holmes, HOLMES'S APPLEMAN ON INSURANCE § 175.01(2d ed.1996).

sion (FTC) has explained the scope of "underwriting" as follows:

> An insurer may obtain a consumer report to decide whether or not to issue a policy to the consumer, the amount and terms of coverage, the duration of the policy, the rates or fees charged, *or whether or not to renew ... a policy,* because these are all "underwriting" decisions.[12]

Second, "underwrite" means "to write one's signature at the end of (an insurance policy), thus assuming liability in the event of a specified loss or damage." [13]

 Given the context in which the terms "underwrite" and "underwriting" exist in AS 21.36.460(d)(1), we interpret those terms to refer to the process by which an insurer measures a consumer's risk level to decide whether, and at what price, the insurer will accept the risk of loss posed by that consumer. In context, the phrase "again underwrite or rate at renewal" therefore refers to the process by which an insurer re-evaluates a consumer's risk level in deciding whether or not to renew that consumer's policy and, if so, at what rate. This definition was confirmed by an expert witness, who stated in an affidavit submitted by Progressive, that the term "underwrite" refers to "the function of securing and evaluating information, and making decisions to accept or reject risks."

Progressive argues that it would not be "again underwriting" at renewal because, it asserts, it would not be taking an affirmative action; it would be merely "maintain[ing] an insured's status in the same credit underwriting tier or rate classification." This argument, however, overlooks a fundamental question: For what purpose would Progressive "maintain" a consumer's credit tier if not for underwriting?

 An insurer's decision to offer a consumer the option to renew her policy is, by definition, an "underwriting decision." [14] It is a decision that necessarily implies that the insurer has analyzed the consumer's risk of loss and found it to be acceptable. Under its proposal, even if Progressive offers to renew a consumer's policy at the same rate and underwriting risk group, it will have done so only after considering the consumer's frozen credit tier as a factor in its renewal decision. This process violates AS 21.36.460(d)(1) because it falls within the plain meaning of "again underwriting or rating" at renewal based in part on a consumer's credit history.

### 2. The division's interpretation of AS 21.36.460(d)(1) does not render other sections of AS 21.36.460 superfluous.

 "When we engage in statutory construction, we must, whenever possible, interpret each part or section of a statute with every other part or section, so as to create a harmonious whole." [15] We must presume "that the legislature intended every word, sentence, or provision of a statute to have some purpose, force, and effect, and that no words or provisions are superfluous." [16] Progressive argues that the division's interpretation of AS 21.36.460(d)(1) is wrong because it renders four distinct provisions of AS 21.36.460 superfluous. Progressive contends that if credit must be completely removed from consideration at renewal as the division claims, all four of these provisions would be unnecessary.

First, Progressive notes that AS 21.36.460(d)(1) prevents insurers from "fail[ing] to renew ... a personal insurance policy ... based in whole or in part" on credit. It argues that if AS 21.36.460(d)(1) really requires insurers to completely strip

---

12. *Wilting v. Progressive County Mut. Ins. Co.,* 227 F.3d 474, 476 (5th Cir.2000) (quoting FTC COMMENTARY ON THE FAIR CREDIT REPORTING ACT, Comment 604(3)(C)–1, 16 C.F.R. Pt. 600, App.) (emphasis added).

13. WEBSTER'S NEW WORLD COLLEGE DICTIONARY 1558 (4th ed.2004); *see also* AS 21.27.900 (stating that "[i]n this chapter ... 'underwrite' means the authority to accept or reject risk on behalf of the insurer").

14. *See Wilting,* 227 F.3d at 476.

15. *Kodiak Island Borough v. Exxon Corp.,* 991 P.2d 757, 761 (Alaska 1999) (internal quotation marks omitted).

16. *Id.*

out credit scores at renewal when underwriting or rating, the statute would not need to also prohibit insurers from using credit to fail to renew a policy because credit would already be removed from consideration. Second, Progressive notes that per AS 21.36.460(e) "if a consumer is charged a higher premium based on the use of incorrect credit history, the insurer must 'rerate the policy retroactive to the effective date of the *current* policy term.'" (Emphasis by appellee.) Progressive argues that if credit must be stripped out at renewal, there would be no need for the word "current" because only the consumer's first policy could be based on credit. Finally, Progressive notes that the definition of "adverse action" as used in AS 21.36.460(i)(1)(A) and (C) includes both the failure to renew coverage and the unfavorable change in coverage based upon credit information. These too, it argues, would be superfluous if insurers were forced to strip out credit scores at renewal.

[12] However, as the division points out, all of these arguments ignore the significance of AS 21.36.460(d)(1)'s waiver provision. Because the statute permits a consumer to waive the credit usage ban, it is possible that credit can be used even when a policy is renewed, and it is therefore possible such usage can cause an "unfavorable change in coverage." Similarly unpersuasive is Progressive's argument that AS 21.36.460's "fail[ure] to renew based on credit" language is superfluous under the division's interpretation. Under AS 21.36.460(d)(1), "fail[ing] to renew" based on credit and "underwriting or rating" based on credit are two distinct concepts. By its own terms, the waiver provision in AS 21.36.460(d)(1) only applies to "underwriting or rating a personal insurance policy at renewal." The waiver provision therefore allows a consumer to permit his insurer to re-underwrite or re-rate his policy based on credit. The waiver provision in AS

21.36.460(d)(1) does not, however, extend so far as to allow insurers to fail to renew a consumer's policy based on credit. A consumer who thinks he has a favorable credit score is thus able to allow his insurer to underwrite or rate his policy based on credit. But if that consumer's credit score is actually unfavorable the insurer is prohibited from failing to renew his policy on that basis. Progressive argues that this hypothetical scenario is improbable because "What [consumer] would ask for credit to be used at renewal if it would lead to a failure to renew their policy?" Progressive overlooks the possibility that consumers might mistakenly believe that their credit scores are better than they actually are. Given the legislature's criticism of the credit scoring process as mysterious,[17] the legislature has apparently contemplated such a scenario. Alaska Statute 21.36.460's language prohibiting insurers from failing to renew based on credit is therefore not superfluous under the division's interpretation.

### 3. Alaska Statute 21.36.460's legislative history supports the division's interpretation.

[13] When we interpret Alaska statutes we "apply a sliding scale of interpretation, where the plainer the language, the more convincing contrary legislative history must be."[18] The division interpreted the plain language of AS 21.36.460(d)(1) as prohibiting Progressive's proposed use of consumers' frozen credit scores at renewal. Progressive argues that AS 21.36.460's legislative history does not support this interpretation. We disagree.

Annette Skibinski, staff to Senator Cowdery (who, with Senator Elton, co-authored Senate Bill 13, which enacted AS 21.36.460(d)(1))[19] testified before the Senate Judiciary Committee that Senate Bill 13 pre-

---

17. *See, e.g.,* Minutes of the Senate Labor and Commerce Committee, April 8, 2003, testimony of Annette Skibinski, staff to Senator Cowdery (Tape 03–19, Side A) ("[M]ost of us are aware that the insurance industry uses our credit score to determine our rates, and I said aware that they use this not how they use this. And I would tell you if I could but I can't because it's a secret.").

18. *State v. Pub. Safety Employees Ass'n,* 93 P.3d 409, 415 (Alaska 2004) (quotation omitted).

19. Minutes of the Senate Labor and Commerce Committee, April 8, 2003, testimony of Annette Skibinski, staff to Senator Cowdery (Tape 03–19, Side A).

cludes insurers from "[using] credit when it's time to renew a policy in rating or underwriting."[20] Ms. Skibinski further testified that "at every renewal period, the consumer has to ask for the[ir] credit to be used. Otherwise it won't be used at all at renewal."[21] Moreover, Ms. Skibinski testified that Senate Bill 13 requires insurers at renewal to look at factors such as the consumer's driving record, payment history, and how many claims the consumer has filed—but not the consumer's credit score.[22] Even if we assume, for the sake of argument, that the plain language of AS 21.36.460(d)(1) is ambiguous, AS 21.36.460's legislative history convincingly supports the division's position that a consumer's credit score must be stripped out at renewal unless the consumer consents to its continued usage.[23]

### B. Alaska Statute 21.36.460 Is Not Preempted by the Federal Fair Credit Reporting Act.

#### 1. The McCarran–Ferguson Act does not apply.

Progressive also argues that AS 21.36.460 is preempted by the federal Fair Credit Reporting Act (FCRA).[24] The division counters that there is no preemption here, given both ordinary preemption principles and the McCarran–Ferguson Act's[25] special "anti-preemption" rule. We address the division's latter argument first.

Under the Supremacy Clause of the federal constitution,[26] state laws that interfere with federal laws are invalid.[27] "Federal laws can preempt state laws in the following three ways: (1) if Congress expressly declares that state law is preempted; (2) if Congress demonstrates an intent to occupy a field exclusively; and (3) if there is an actual conflict between federal and state law."[28] When considering preemption, courts "start with the assumption that the historic police powers of the States were not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress."[29]

In contrast to these ordinary preemption principles, the McCarran–Ferguson Act created a "special insurance-related federal anti-pre-emption rule" that applies to certain state statutes that regulate the insurance industry.[30] The McCarran–Ferguson Act "seeks to protect state regulation primarily against *inadvertent* federal intrusion—say, through enactment of a federal statute that describes an affected activity in broad, general terms, of which the insurance business happens to constitute one part."[31] Under the McCarran–Ferguson Act, "a federal statute will *not* pre-empt a state statute enacted 'for the purpose' of regulating the business of insurance'—*unless* the federal statute '*specifically relates to the business of insurance.*'"[32] In *Barnett Bank of Marion*

**20.** Minutes of the Senate Judiciary Committee, May 12, 2003, testimony of Annette Skibinski, staff to Senator Cowdery (Tape 03–44, Side A).

**21.** Minutes of the House Labor and Commerce Committee, May 18, 2003, testimony of Annette Skibinski, staff to Senator Cowdery (Tape 03–54, Side A).

**22.** *Id.*

**23.** Because we hold that Progressive's proposal violates AS 21.36.460(d)(1)'s ban on using credit history at policy renewal, we do not need to decide whether the division correctly also rejected Progressive's proposal because it violates the Insurance Code's prohibition against arbitrary and unfair discrimination. *See* AS 21.39.030; AS 21.36.090(c); AS 21.36.120(c).

**24.** 15 U.S.C. §§ 1681–81x (2006).

**25.** 15 U.S.C. §§ 1011–15 (2006).

**26.** U.S. Const. art. VI, cl. 2.

**27.** *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 604, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991).

**28.** *State v. Dupier*, 118 P.3d 1039, 1049 (Alaska 2005) (citing *Totemoff v. State*, 905 P.2d 954, 958 (Alaska 1995)).

**29.** *Mortier*, 501 U.S. at 605, 111 S.Ct. 2476 (quotation omitted); *see also Native Vill. of Eklutna v. Alaska R.R. Corp.*, 87 P.3d 41, 56 (Alaska 2004).

**30.** *Barnett Bank of Marion County, N.A., v. Nelson*, 517 U.S. 25, 27–28, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996).

**31.** *Id.* at 39, 116 S.Ct. 1103 (emphasis in original).

**32.** *Id.* at 27–28, 116 S.Ct. 1103 (emphasis in original) (quoting the McCarran–Ferguson Act, 15 U.S.C. § 1012(b)).

*County, N.A. v. Nelson,* the Supreme Court held that a federal statute "specifically related to the business of insurance" because it specifically referred to the insurance industry, and its state regulatory implications were not surprising or inadvertent.[33]

Progressive argues that the McCarran–Ferguson Act does not apply because the FCRA "specifically relates to the business of insurance." The division does not dispute this. Instead, the division seems to argue that the McCarran–Ferguson Act applies because the FCRA indicates that Congress "did not intend to preempt state regulation of insurance." However, the test for whether the McCarran–Ferguson Act applies is not whether the federal statute intends to preempt the state regulation; it is whether the federal statute specifically relates to the business of insurance. And the FCRA does just that because it specifically refers to the insurance industry. For example, the FCRA states that a person may use a consumer report "in connection with the underwriting of insurance involving the consumer."[34] Because the FCRA relates to the business of insurance, the McCarran–Ferguson Act does not apply.

## 2. Under ordinary preemption principles, AS 21.36.460 is not preempted by the FCRA.

Progressive contends that the FCRA preempts AS 21.36.460 insofar as the two conflict. Progressive argues that because several provisions of the FCRA "clearly contemplate that insurance companies may use credit scores in connection with insurance underwriting," the division's interpretation of AS 21.36.460 is unenforceable because

it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress expressed in the [FCRA]." The division responds by observing that the FCRA explicitly states that it does not preempt state laws "except to the extent that [they] are inconsistent with [the FCRA], and then only to the extent of the inconsistency."[35] It notes that although the FCRA allows insurers to use credit scores to underwrite, it also allows consumers to prohibit insurers from doing so.[36] The division also points out that the FCRA merely states that insurers *may* use consumers' credit information for underwriting; not that they *must* use it. The division argues that because AS 21.36.460's restriction of an insurer's ability to use credit information could not trigger a federal enforcement action, AS 21.36.460 is not inconsistent with the FCRA.[37]

A state law is inconsistent with a federal law "if the state law conflicts with the federal law to the extent that (a) it is impossible to comply simultaneously with both or (b) the state regulation obstructs the execution of the purpose of the federal regulation."[38] The division relies on *Credit Data of Arizona, Inc. v. State of Arizona* to support its argument that the FCRA does not preempt AS 21.36.460.[39] In *Credit Data,* the United States Court of Appeals for the Ninth Circuit held that an Arizona law that prohibits credit reporting agencies from charging fees for disclosure was not inconsistent with the FCRA, which permits the assessment of such fees, for two reasons.[40] First, the court held that the Arizona law is not inconsistent with the FCRA because compliance with the Arizona law could not trigger a federal en-

33. *Barnett Bank of Marion County, N.A., v. Nelson,* 517 U.S. 25, 38–41, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996).

34. 15 U.S.C. § 1681b(a)(3)(C) (2006); *see also* 15 U.S.C. § 1681b(c), (e), (g) (2006).

35. 15 U.S.C. § 1681t(a) (2006).

36. The division cites 15 U.S.C. §§ 1681b(c) and (e) to support this proposition.

37. *See Jones v. Rath Packing Co.,* 430 U.S. 519, 540, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977) (holding that because it would be possible to comply

with state law without triggering federal enforcement action, state requirement was not inconsistent with federal law).

38. *Interior Reg'l Hous. Auth. v. James,* 989 P.2d 145, 149 (Alaska 1999) (quoting *In re J.R.B.,* 715 P.2d 1170, 1172 (Alaska 1986)).

39. *Credit Data of Ariz., Inc. v. State of Ariz.,* 602 F.2d 195 (9th Cir.1979).

40. *Id.* at 198.

forcement action.[41] Second, the court reasoned that the Arizona law "does not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the Federal Act since it merely adds an additional protection to the consumer for whose protection both statutes were enacted."[42]

In *Davenport v. Farmers Insurance Group*, the United States Court of Appeals for the Eighth Circuit held that the provisions of the Minnesota Insurance Fair Information Reporting Act (MIFIRA) that require insurers to notify consumers before obtaining their credit information are not preempted by the FCRA.[43] In so holding, the *Davenport* court noted that the FTC's commentary on the FCRA included the following example of a permissible state regulation that it found to closely resemble the MIFIRA: "A State law requirement that an employer provide notice to a consumer before ordering a consumer report ... would not be pre-empted, because a party that complies with such provisions would not violate the FCRA."[44] The Eighth Circuit found this commentary particularly analogous to the situation presented by the MIFIRA because "employers and insurance companies are treated similarly with respect to the acquisition of consumer reports under the FCRA."[45]

Among its various "permissible purposes of consumer reports," the FCRA states that "any consumer reporting agency may furnish a consumer report" to an insurer for use "in connection with the underwriting of insurance involving the consumer."[46] Alaska Statute 21.36.460 does not ban the use of credit at renewal for that purpose; it merely requires consumer consent before an insurer may do so. Because the FCRA does not provide insurers with an absolute right to use credit for underwriting purposes, AS 21.36.460's restriction on credit score usage could not trigger an enforcement action under the FCRA. The FTC's commentary to the FCRA, as noted by the Eighth Circuit in *Davenport*, supports this conclusion because it indicates that states may impose restrictions on the use of credit without violating the FCRA.[47] Furthermore, as the Ninth Circuit pointed out in *Credit Data*, Congress enacted the FCRA to protect consumers.[48] Because AS 21.36.460's consumer consent requirement was similarly enacted to protect consumers, it does not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress expressed in the FCRA. Alaska Statute 21.36.460 is therefore not preempted by the FCRA.

## V. CONCLUSION

The division correctly interpreted AS 21.36.460(d)(1) as prohibiting Progressive's proposal. Furthermore, AS 21.36.460(d)(1) is not preempted by the federal FCRA. We therefore REVERSE the superior court order that reversed the division's order and REMAND for entry of the division's order.

MATTHEWS, Justice, not participating.

---

**41.** *Id.*

**42.** *Id.*

**43.** *Davenport v. Farmers Ins. Group*, 378 F.3d 839, 842–43 (8th Cir.2004) (discussing Minnesota Insurance Fair Information Reporting Act, Minn. Stat. §§ 72A.494–.505).

**44.** *Id.* at 843 (quoting Comment 622–2, 16 C.F.R. Pt. 600, App.).

**45.** *Id.* (comparing 15 U.S.C. § 1681b(a)(3)(B) (which permits consumer reporting agency to release consumer report for employment purposes) with 15 U.S.C. § 1681b(a)(3)(C) (which permits same for purpose of underwriting insurance for consumer)).

**46.** 15 U.S.C. § 1681b(a)(3)(C) (2006).

**47.** *Davenport*, 378 F.3d at 843 (quoting Comment 622–2, 16 C.F.R. Pt. 600, App.).

**48.** *Credit Data*, 602 F.2d at 198.